1 P.3d 1180 (2000)
101 Wash.App. 89
In re the MARRIAGE OF James J. CROSETTO, Respondent, and
Laurel E. Crosetto, Appellant.
No. 24008-4-II.
Court of Appeals of Washington, Division 2.
June 9, 2000.
*1181 Laurel E. Crosetto, Tacoma, pro se.
Ross Edwin Taylor, Terrence F. McCarthy, McCarthy, Holum, Causseaux & Rourke, Inc., Tacoma, for Respondent.
SEINFELD, J.
When this marriage dissolution case was previously before the Court of Appeals, the court concluded that it was necessary to remand the matter to the trial court for clarification of portions of the ruling. In re Marriage of Crosetto, 82 Wash.App. 545, 918 P.2d 954 (1996). Meanwhile, the original judge retired before the assigned trial date, and the parties agreed to allow a successor judge to make the necessary determinations based upon the record from the first trial. Further, the successor judge determined that he could make those findings without engaging in credibility determinations. Laurel Crosetto now appeals from the successor judge's findings, arguing that she was entitled to a new trial and that the trial court abused its discretion in making its findings. We affirm.

FACTS
Following the original trial, the court made the following relevant findings: (1) James Crosetto's real estate appraisal business had a value of $50,000; (2) the couple's community debts included a $14,000 IRS debt; and (3) Laurel Crosetto was entitled to be relieved of her obligation to pay child support. Crosetto, 82 Wash.App. at 552, 560, 918 P.2d 954. The only reasons the trial court provided for the child support deviation were "a disparity in earning capacity and ... substantial obligations of the wife to pay attorney's fees and other costs associated with mental health professionals hired by [her] during trial." Crosetto, 82 Wash.App. at 560, 918 P.2d 954.
*1182 James Crosetto appealed these rulings. He asserted that the evidence established that the business had no goodwill and that its actual value was $5,000  the value of its tangible assets plus accounts receivable. Crosetto, 82 Wash.App. at 553, 918 P.2d 954. He also asserted that neither the disparity in the parties' earning capacity nor Laurel Crosetto's voluntarily incurred debt provided a proper basis for a downward deviation from the child support schedule. Crosetto, 82 Wash.App. at 559, 918 P.2d 954.
At trial, the parties' experts had come to two very different conclusions with regard to the presence of goodwill.[1] James Crosetto's expert acknowledged that James Crosetto had a good reputation. Nonetheless, based upon James Crosetto's office-sharing arrangement, month-to-month lease, no advertisement in the Yellow Pages, and absence of routine dealings with the general public, he concluded that there was no goodwill. Crosetto, 82 Wash.App. at 554, 918 P.2d 954.
Laurel Crosetto's expert had determined there was goodwill and he valued it at $125,582. Crosetto, 82 Wash.App. at 554, 918 P.2d 954. He reached this conclusion by calculating the average of James Crosetto's gross income for four years, less operating expenses, and multiplying by 1.5 percent. Crosetto, 82 Wash.App. at 554, 918 P.2d 954. He stated that there was "inherent value because this man has an ability to create income, a stream of cash" and that this could be called either goodwill or "the value of the business."[2]Crosetto, 82 Wash.App. at 554-55, 918 P.2d 954.
Without specifically finding that goodwill existed, the trial court had determined that the value of the business was $50,000. Crosetto, 82 Wash.App. at 555, 918 P.2d 954. On appeal, this court reached the following conclusions:
We cannot determine from the record before us whether the trial court actually found "goodwill." Once the trial court finds goodwill, it must set forth on the record the factors and method used in reaching a finding of goodwill and its value. Because the trial court here did not state how it reached the valuation figure, we remand and direct the trial court to set forth the factors and methods used in valuation if it indeed finds goodwill exists.
. . . .
... Because we remand on the issue of goodwill, the trial court has the discretion to adjust the property division depending upon valuation of goodwill. The trial court must also allocate the IRS debt.
Crosetto, 82 Wash.App. at 555, 557, 918 P.2d 954 (citations omitted).
With regard to the child support issue, this court held:
Although there was evidence in the record to support the trial court's finding regarding earning capacity and Laurel Crosetto's expenses justifying a downward departure, these reasons do not merit a complete elimination of a support obligation.
The trial court abused its discretion in relieving Laurel Crosetto of any child support obligation. On remand, the trial court must follow the procedure for setting child support as discussed above, and set forth specific reasons for deviating from the standard calculation in written findings of fact.
Crosetto, 82 Wash.App. at 562-63, 918 P.2d 954.
After the remand of this case, James Crosetto noted the matter for a new trial setting and trial was scheduled for March 31, 1998. By that time, the original trial judge had retired from the bench. On March 23, Laurel Crosetto's newly retained attorney, Michael Harris, appeared and moved for a continuance, obtaining an order to shorten time so that the motion could be heard on the March 31 trial date.
On March 31, the parties agreed to have the matter set over and heard on the court's motion calendar. Michael Harris later submitted *1183 a declaration explaining these events, as follows:
On the 31st day of March, 1998, Mr. McCarthy [attorney for James Crosetto] and I appeared in court. Mr. McCarthy was prepared for trial. I was before the Court with Mrs. Crosetto asking for a continuance as I had recently been retained. After discussion with the Judge, we reached an agreement. The agreement was that this matter would be heard on the motion docket on the 1st day of May, 1998. An Order to this effect was signed by Judge Rudy Tollefson. Later that day an Order was entered which we had agreed would be entered by Mr. McCarthy. The agreement as to the content of the order was reached in the morning. Mr. McCarthy went back to his office, prepared the order, faxed it to me, and then had it entered that afternoon. The Order Continuing Trial Setting Date for Submission of Briefs and Authorizing the Filing of Les [sic] Pendens by Petitioner is in conformance with the agreement we reached in front of Judge Tollefson. I had a chance to review it before it was entered by Mr. McCarthy.
Clerk's Papers at 118-19.
The order to which Harris refers was entered on March 31 and states that "this matter is set over for determination on the motion docket on the 1st day of May, 1998." The court did not hear the matter on May 1; instead, it again continued the matter after Laurel Crosetto informed the assigned judge about a possible conflict of interest. The matter was then reassigned to the successor judge whose ruling is before us.[3]
On June 5, the successor judge heard James Crosetto's motion to implement the Court of Appeals decision. Laurel Crosetto's then new attorney, David Minikel, asserted that he was unaware that the parties had agreed to have the matter heard on the motion docket and argued that a new trial was necessary because the court needed additional testimony to make the requested findings.
The successor judge stated that he would determine the issues in the case based on the record before the original trial judge, basing this decision partly on the fact that the parties had agreed to this and partly on the finding that there were no credibility issues that required new testimony.
After reviewing the entire record, the successor judge ruled that James Crosetto's business had no goodwill value and, therefore, it was necessary to reallocate $45,000 in property. The court included the $14,000 IRS debt in that property and assigned it to James Crosetto. The court also determined that the record contained no reason to deviate from the child support worksheet. Consequently, it awarded back support to James Crosetto starting in 1994. In all, the court awarded 70 percent of the net assets to Laurel Crosetto and 30 percent to James Crosetto.
The successor judge's order setting out these awards also made a finding that the parties agreed to have the matter heard on the motion docket rather than at a trial de novo. Laurel Crosetto appeals.

I. DUTIES OF A SUCCESSOR JUDGE
Laurel Crosetto argues that she was entitled to a new trial after remand to a successor judge. She contends that the successor judge abused his discretion by entering findings of fact based upon the original record. James Crosetto responds that under the circumstances, where the parties agreed to the successor judge's procedure and credibility determinations were not necessary, it was appropriate for the successor judge to decide the issues based upon the original record.
Generally, a successor judge lacks authority to enter findings of fact on the basis of testimony heard by a predecessor judge. Tacoma Recycling, Inc. v. Capital Material Handling Co., 42 Wash.App. 439, 441-42, 711 P.2d 388 (1985) (successor judge following a remand had no authority to adopt the vacated findings and conclusions of the original judge); In re Welfare of Woods, 20 Wash. App. 515, 517, 581 P.2d 587 (1978) (termination of parental rights remanded for entry *1184 of additional findings; new trial required if trial judge has left the bench); Wold v. Wold, 7 Wash.App. 872, 877, 503 P.2d 118 (1972) (new trial required in dissolution action where findings of fact inadequate and trial judge no longer on the bench).
Statute and court rules contain similar provisions. RCW 2.28.030(2) states that a judge "shall not act" as a judge "[w]hen [the judge] was not present and sitting as a member of the court at the hearing of a matter submitted for its decision." But CR 63(b) contains a limited exception to this rule:
If by reason of death, sickness, or other disability, a judge before whom an action has been tried is unable to perform the duties to be performed by the court under these rules after verdict is returned or findings of fact and conclusions of law are filed, then any other judge regularly sitting in or assigned to the court in which the action was tried may perform those duties; but if such other judge is satisfied that he cannot perform those duties because he did not preside at the trial or for any other reason, he may in his discretion grant a new trial.
"Taken together, the case law and [court] rules set forth the rule that a successor judge only has the authority to do acts which do not require finding facts. Only the judge who has heard evidence has the authority to find facts." State v. Bryant, 65 Wash.App. 547, 550, 829 P.2d 209 (1992).
Here, on the first appeal, this court required the trial court on remand to determine the value of James Crosetto's business, based in part on the presence or absence of goodwill. "[T]he valuation of property awarded in a divorce case is a material and ultimate fact." Wold, 7 Wash.App. at 878, 503 P.2d 118. The successor judge also had to determine whether the record contained sufficient reasons to deviate downward from the child support schedule. Thus, generally, it would have been necessary for the successor judge to grant a new trial.
The important difference in the instant case, however, is that the parties agreed to allow the successor judge to make findings of fact based upon the evidence in the record from the first trial. We find no Washington law that prohibits parties from so agreeing.
Further, decisions interpreting former Federal Rule of Civil Procedure (FRCP) 63, which was identical to CR 63(b), support the successor judge's actions. See DGHI Enter. v. Pacific Cities, Inc., 137 Wash.2d 933, 941-42, 977 P.2d 1231 (1999). Those decisions suggest that a successor judge need not grant a new trial if the parties agree to have him or her decide the case based on the record before the predecessor judge.
For example, in Arrow-Hart, Inc. v. Philip Carey Co., 552 F.2d 711, 713 (6th Cir. 1977), the court held that, under former FRCP 63, "in the absence of unanimous agreement of the parties, ... we hold that a new trial is required." Similarly, the court in Whalen v. Ford Motor Credit Co., 684 F.2d 272, 278 (4th Cir.1982), stated, "we have demonstrated that Rule 63 communicates a positive prohibition on substitution of a judge prior to verdict where, as here, all parties have not stipulated their consent." And in Home Placement Serv., Inc. v. Providence Journal Co., 819 F.2d 1199, 1202 (1st Cir. 1987), the court stated that "we joined numerous other courts of appeal in recognizing that if a presiding judge in a civil case becomes disabled prior to issuing findings of fact and conclusions of law, then a successor judge must ordinarily retry the case unless the parties stipulate otherwise." (emphasis added); see also Milbrew, Inc. v. Commissioner of Internal Revenue, 710 F.2d 1302, 1308 (7th Cir.1983) (affirming successor judge's ruling based on record before original judge because parties consented to the reassignment); Higginbotham v. Corner Stone Bank, 917 F.2d 1130, 1132-33 (8th Cir.1990) (affirming successor judge's ruling based on original record because party waived objection to having that judge decide the case).
As James Crosetto points out, several state courts also have held that the parties can consent to having a successor judge decide a case based upon the original record. E.g., Weaver v. Grace, 521 So.2d 19, 22 (Ala. 1988); Bradford v. Foundation & Marine Constr. Co., 182 So.2d 447, 449 (Fla. 2d DCA 1966); Christopher v. Nelson, 50 Mich.App. *1185 710, 213 N.W.2d 867, 868 (1973); Worden v. Alexander, 108 Mont. 208, 90 P.2d 160, 161 (1939); Bell v. Great Lakes Container Corp., 702 P.2d 387, 391-92 (Okla.Civ.App. Div. 1985); Ciaffoni v. Ford, 211 Pa.Super. 472, 237 A.2d 250, 251 (1968).
Here, the record supports the successor judge's finding that the parties agreed to have him decide the issues based upon the record of the prior trial. When James Crosetto's attorney was ready to proceed on the scheduled March 31 trial date, Laurel Crosetto's recently retained attorney was not ready to proceed and needed a continuance.[4] The two attorneys discussed the situation with the assigned trial judge and agreed to a compromise: Laurel Crosetto would receive a continuance, but the court would decide the issues on the motion calendar  in other words, based upon the existing record. Later that day, the court entered the parties' agreed order to that effect.[5]
The cases cited above support the conclusion that there is no necessity for a new trial where, as here, the parties agree to allow the successor judge to rely on the record. Therefore, we find that the successor judge did not abuse his discretion in making findings of fact based upon the original record.
When this matter was before the successor judge, Laurel Crosetto's new attorney asserted that he was unaware of any such agreement between the parties and argued that additional testimony would be necessary to make the required determinations. The successor judge disagreed, stating that, concerning goodwill, "[t]o me, it's not weighing the credibility of the experts; it's weighing the methodology and giving credibility to the methodology and whether the Court is willing to approach a middle [$50,000] figure."
With regard to the child support deviation, the following colloquy ensued:
THE COURT: So you're agreeing there's no need for additional testimony, correct, as to that issue?
MR. MINIKEL: Only as to the extent of what the ability of a party is to pay. There is a work sheet that was signed by [the predecessor judge]. But there is findings of fact that are necessary as to whether or not there should be a deviation downward.
THE COURT: Correct, but all of that is bound by the testimony in the record. This is not a modification. We wouldn't go back and take testimony on what the circumstances of the parties are now. That would be a modification. This is to review and make a determination [of] what the trial court should have entered back when this was tried in 1993. That's the directive from the Court of Appeals.
Thus, deciding to rely upon the original record in making findings, the successor judge found it significant that there was no need for credibility determinations.
We find only one case in this jurisdiction that discusses whether the absence of credibility determinations, alone, provide a proper basis to avoid the general rule requiring a new trial. Tacoma Recycling, 42 Wash.App. at 440-441, 711 P.2d 388. In Tacoma Recycling, a civil rule violation led the appellate court to vacate the trial court's findings, conclusions, and judgment and to remand for a ruling on appellant's motion for a new trial. 42 Wash.App. at 440, 711 P.2d 388. On remand, the successor judge denied the motion for a new trial and, instead, "adopted in toto the original findings of fact and conclusions *1186 of law." Tacoma Recycling, 42 Wash. App. at 440, 711 P.2d 388.
On review of the successor judge's actions, this court reversed, holding that a successor judge may enter conclusions but "is without power to enter findings of fact on the basis of testimony heard by his predecessor." Tacoma Recycling, 42 Wash.App. at 440, 711 P.2d 388. In doing so, the Tacoma Recycling court rejected the respondents' argument that the successor judge must be "disqualified to enter findings of fact only when he must resolve conflicting or disputed testimony that was presented before his predecessor...." 42 Wash.App. at 440-41, 711 P.2d 388. The court stated that it had found no support for an exception to the general new trial rule, except for some federal decisions written before the adoption of FRCP 63. Tacoma Recycling, 42 Wash.App. at 441, 711 P.2d 388.
After the decision in Tacoma Recycling and after the adoption of FRCP 63, federal courts interpreting that rule have continued to recognize an exception for cases not involving credibility determinations. For example, in Home Placement Serv., 819 F.2d at 1204, the court held as follows:
We cannot imagine that a court of appeals wishing to remand a case for a determination of damages must always order a new trial before a successor judge whenever the original judge, for whatever reason, is no longer available to hear the case. Such a requirement would be especially repugnant when a retrial would be extremely time consuming, when the credibility of witnesses' testimony is not central to the determination to be made on remand, and when an independent and impartial review of the largely stipulated evidence contained in a written record would suffice.
In another federal case, the court held that,
absent the consent of the parties, a successor master or judge may not be appointed to make findings of fact and conclusions of law based solely upon the transcript developed before the original judge or master, unless no credibility determination as to the testimony of the witnesses needs to be made. This rule would apply in cases where the master's referral order specifically required him to make findings of fact and conclusions of law. The parties must be given an opportunity to object and to demonstrate to the court that credibility issues are involved in the case. Of course, the parties may consent to having the entire case decided upon the record or they may agree as to which witnesses need to testify again.
Henry A. Knott Co. v. Chesapeake & Potomac Tele. Co., 772 F.2d 78, 87 (4th Cir.1985) (emphasis added); see also Emerson Elec. Co. v. General Elec. Co., 846 F.2d 1324, 1326 (11th Cir.1988) ("When a judge has yet to make findings of fact and conclusions of law, a successor judge must retry the case unless (1) all parties consent to resolution based on the trial transcript or (2) summary judgment would be appropriate (i.e., the trial transcript is treated as `supporting affidavits' and no credibility determinations are required for decision).").
These cases suggest that while the absence of credibility determinations alone is not a sufficient basis to deny a new trial, the court should balance fairness considerations with those of judicial economy.[6] In this case, because witness credibility was not at issue, a time-consuming, expensive retrial was not necessary to resolve the issues on remand; "an independent and impartial review of the largely stipulated evidence contained in" the record was more than sufficient. Considering this factor, in addition to the parties' agreement to allow the successor judge to *1187 rely on the record, we find that the successor judge did not abuse his discretion in following this procedure.
A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
MORGAN, P.J., and HOUGHTON, J., concur.
NOTES
[1] "Goodwill" is defined as the "expectation of continued public patronage." In re Marriage of Hall, 103 Wash.2d 236, 239, 692 P.2d 175 (1984).
[2] This court found that Laurel Crosetto's expert "considered the terms `goodwill' and `inherent market value' as the same thing." Crosetto, 82 Wash.App. at 555, 918 P.2d 954.
[3] Meanwhile, Harris obtained an order allowing him to immediately withdraw from the case.
[4] In our first opinion, we observed that

[a]lthough there may be varying reasons for retaining new counsel, we note that to date, Laurel Crosetto has employed at least fifteen different attorneys. The frequency of these changes resulted in duplicative work and continuances and other delays.
Crosetto, 82 Wash.App. at 565 n. 7, 918 P.2d 954. This pattern apparently continued after remand.
[5] At oral argument before this court, Laurel Crosetto, pro se, asserted for the first time that she had not agreed to allow the successor judge to decide the case based on the record. But the trial court made a contrary finding that is supported by substantial evidence. We consider findings of fact that are supported by substantial evidence in the record to be verities on appeal. Waremart, Inc. v. Progressive Campaigns, Inc., 139 Wash.2d 623, 632-33, 989 P.2d 524 (1999) (citing State v. Hill, 123 Wash.2d 641, 647, 870 P.2d 313 (1994)).
[6] The language of the current FRCP 63 further clarifies the federal courts' position regarding the requirement of a new trial. Amended in 1991, FRCP 63 now provides:

Inability of a Judge to Proceed. If a trial or hearing has been commenced and the judge is unable to proceed, any other judge may proceed with it upon certifying familiarity with the record and determining that the proceedings in the case may be completed without prejudice to the parties. In a hearing or trial without a jury, the successor judge shall at the request of a party recall any witness whose testimony is material and disputed and who is available to testify again without undue burden. The successor judge may also recall any other witness.