# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In the Matter of the Marriage of | No.  50009-4-II |
| JOHN ARTHUR MASON, | |
| Respondent, | |
| and | |
| TATYANA IVANOVNA MASON, | |
| Appellant. | Consolidated With |
| In the Matter of the Marriage of | No.  52959-9-II |
| JOHN ARTHUR  MASON, | |
| Respondent, | |
| and | |
| TATYANA IVANOVNA MASON, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — In this consolidated case, Tatyana Mason appeals the trial court's denial of three different motions over two years, all relating to disputes with her husband John Mason over a 2013 parenting plan.  She appeals the trial court's denial of her 2017 motion to compel payment of funds held in a supersedeas bond, her 2017 CR 60 motion to vacate a 2013 parenting plan, and a 2018 motion for the trial court to enter findings and conclusions from a prior trial that was pending appeal.

No. 50009-4-II;
Cons. No. 52959-9-II

Tatyana[1] argues that (1) the trial court did not properly consider her motion to release funds in a supersedeas bond; (2) the trial court abused its discretion when it denied her motion to vacate the parenting plan; (3) the trial court's denial of her motion to vacate the parenting plan infringes on her constitutional liberty interest in raising her children; (4) the trial court's denial of her motion to vacate the parenting plan violated federal immigration regulations; (5) the trial court failed to consider the parties' financial circumstances when it denied her motion to vacate and during the 2013 trial that resulted in the parenting plan; (6) the trial court erred when it denied her 2018 motion to enter new findings on an issue that was pending appeal; and (7) the now-retired trial court judge who presided over her 2016 trial, the results of which we reviewed in a 2018 appeal, should be ordered to appear as a judge pro tempore to enter findings on remand from our 2018 decision. Tatyana requests sanctions and attorney fees under RAP 18.9. John also requests attorney fees and costs under RAP 18.1 and 18.9.

We hold the following: (1) Tatyana's argument that the trial court erred when it did not release funds in the supersedeas bond is moot because we vacated those fees in a prior appeal, (2) the trial court did not abuse its discretion when it denied Tatyana's 2017 motion to vacate the 2013 parenting plan under CR 60, (3) Tatyana's argument regarding her constitutional right to raise children is barred by RAP 2.5, (4) Tatyana's argument on federal immigration regulations is barred by res judicata, (5) Tatyana's argument that the trial court failed to consider financial circumstances is barred by res judicata, (6) the trial court did not err when it denied her 2018

---

[1] We refer to the Masons by their first names for clarity. No disrespect is intended.

motion to enter findings on an issue then pending appeal, (7) although a retired trial court judge

is authorized to sit as a judge pro tempore by statute, we have no authority to order him to come

out of retirement to preside over a case. We deny both parties' requests for attorney fees.

Accordingly, we *affirm* the decisions of the trial court.

FACTS

This appeal is the fourth to arise from the dispute between Tatyana and John Mason

following their marital dissolution in 2008.[2] Our two prior opinions provide necessary factual

background for this appeal. The procedure of the second appeal is a central issue in this case.

I. PROCEDURAL HISTORY

Tatyana and John married in 1999 and had two children. *In re Marriage of Mason*, No.

45835-7-II, slip op. at 2 (Wash. Ct. App. July 7, 2015) (unpublished),

https://www.courts.wa.gov/opinions/pdf/D2%2045835-7-

II%20%20Unpublished%20Opinion.pdf (*Mason* I). Tatyana came to the United States on

"fiancée visa" sponsored by John. *In re Marriage of Mason*, No. 49839-1-II, slip op. at 2 (Wash.

Ct. App. July 31, 2018) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2049839-1-

II%20Unpublished%20Opinion.pdf, *review denied*, 192 Wn.2d 1024, (Mar. 6, 2019), c*ert.*

*denied*, 140 S. Ct. 296, 205 L. Ed. 2d 177 (Oct. 7, 2019) (*Mason* II). John filed for divorce in

2007. Tatyana filed a petition for a domestic violence protection order, and a superior court

---

[2] The third appeal was pending at the time this appeal was heard. *See Mason v. Mason*, No.
51642-0-II, (Wash. Ct. App. Mar. 21, 2018).

commissioner granted the petition. The trial court entered a dissolution decree and parenting plan in 2008.

In 2011 John filed a petition to modify the parenting plan alleging that Tatyana was abusing the children. John obtained an emergency order placing the children in his residential care. The trial court ordered Tatyana's visits be therapeutic in nature.

A.      *2013 Trial*

In 2013, the parties proceeded to trial on John's modification petition. The trial court, with Judge Anne Hirsch presiding, entered findings of abuse by Tatyana and found that Tatyana was uncooperative in disclosing her finances and that she never arranged for any therapeutic visits. The trial court also found that there were no concerns about future domestic violence from John. The trial court entered a modified parenting plan and Tatyana appealed, but she did not contest the trial court's imputation of income or imposition of child support payments. In July 2015, we affirmed the 2013 parenting plan, holding that the trial court did not abuse its discretion when it entered the 2013 parenting plan. Neither Tatyana nor John appealed.

In September 2015, Tatyana filed a "motion to dismiss" the 2013 child support order (but not the parenting plan). Supplemental Clerk's Papers (Suppl. CP) at 333-39. A superior court commissioner denied her motion that same month. Tatyana did not appeal or seek revision of this decision. In late September or early October 2015, Tatyana filed a "motion for revision" of the 2013 parenting plan, which a superior court commissioner denied on October 9, 2015. *See* CP (49839-1-II) at 25. That same day, Tatyana filed a "Motion/Declaration to Modify/Dismissal of Full Amount of Child Support." Suppl. CP at 349. A superior court commissioner amended

4

the child support order and reduced Tatyana's support to the statutory minimum, but denied her

motion to vacate the unpaid child support she had accrued. Neither party appealed this order.

B.      *2016 Trial*

In October 2015, Tatyana filed a petition to modify the parenting plan and a motion to

vacate the full amount of the child support order. *Mason* II opinion summarizes the relevant

facts.

> The motion to vacate alleged various errors relating to the 2013 child support order. The motion also described Tatyana's precarious economic situation, including the allegation that she was unable to obtain employment because of her immigration status and unpaid child support. . . .
>
> A superior court commissioner denied Tatyana's petition to modify the parenting plan and motion to vacate the child support order. Tatyana moved to revise the commissioner's order. . . .
>
> . . . [T]he trial court stated that it would treat Tatyana's motion to vacate the 2013 child support order as a motion to vacate under CR 60(b). In a subsequent letter ruling, the court explained that because the parties had raised credibility issues, a trial was necessary to allow the parties to present testimony.

*Mason* II, slip op. at 4-5. Judge Christopher Wickham presided over the November 2016 trial.

> At trial, Tatyana represented herself. She offered the testimony of Jay Gairson, an immigration attorney, as an expert witness. The trial court ruled that it would allow Gairson's testimony on immigration law to assist in understanding the issues and law in that area.
>
> . . . .
>
> The trial court entered an order granting the motion to vacate and provided written findings of fact and conclusions of law. . . .
>
> . . . .
>
> . . . [T]he court vacated the 2013 child support order as well as any remaining unpaid child support. The court stated that John could seek entry of a

new child support order, and that the court would consider a request for expert fees at a later hearing.

The court subsequently entered an order in December 2016 vacating the amended child support order the commissioner entered on October 13, 2015, which the court inadvertently failed to include in its previous order.

. . . .

The trial court held a hearing on the issue of expert witness fees. Tatyana requested the costs of Gairson's expert testimony, which he calculated to be $12,800, as well as sanctions under CR 11. The trial court awarded Tatyana costs equal to two-thirds of Gairson's fee based on the parties' relative financial positions.

The trial court awarded to Tatyana the remaining one-third of Gairson's fee as CR 11 sanctions. . . .

. . . .

. . . However, the court did not enter any written findings regarding CR 11 and did not include the basis of its award in the CR 11 order.

Based on its rulings, the trial court entered an order awarding Tatyana $8,533 in costs . . . and $4,267 in sanctions under CR 11.

John appeal[ed] the trial court's order vacating the 2013 child support order and the order awarding expert fees and imposing CR 11 sanctions.

*Mason* II, slip op. at 5-7.

Although the record on appeal does not contain direct documentation, it is clear from both parties' filings that John filed a supersedeas bond with the trial court pending this appeal.[3]

John's appeal is *Mason* II, decided in 2018.

---

[3] Because the supersedeas bond was filed with the trial court in 2017, that filing does not appear in the record on appeal for either case here or the record for *Mason* II. However, based on Tatyana's motion and John's counsel's statements in the record, it is apparent the bond was filed.

## II. 2017 MOTIONS (NO. 50009-4-II)

### A. *Motion To Vacate Parenting Plan*

In January 2017, the same day that John filed his appeal, Tatyana filed another CR 60 "Motion to Vacate 2013 and 2008 Parenting Plan" under CR 60(b)(1), (3), (4), and (11). In it, she restated her grievances that were decided in the 2013 and 2016 trials or that were credibility issues before the court in 2012. She made claims of misrepresentation against John and his trial counsel and stated that the children were in an abusive environment with him.

### B. *Motion To Release Supersedeas Bond Funds*

Later in January 2017, Tatyana filed a motion for the trial court to release funds from the supersedeas bond John filed pending his appeal. Tatyana's motion was entitled "Declaration to Order Petitioner to pay $20,000 for Removal of Condition from My Green Card . . . $12,800 judgment Placed against Petitioner for ongoing abuse of CR ll(A) should NOT be hold [sic] or depend on the Petitioner's Appeal." Suppl. CP at 785. She went on to request that the trial court order John to "release [the money] from the bond and pay to Respondent." Suppl. CP at 785.

### C. *January 2017 Hearing on Both Motions and Resulting Trial Court Order*

In January 2017, the trial court held a single hearing on both motions. Judge Hirsch again presided. On the motion to vacate the parenting plan, Tatyana repeated allegations of fraud, misrepresentation, and misconduct that she raised in the November 2016 trial. The trial court stated that Tatyana's CR 60(b)(4) argument flowed from the November 2016 trial and that the court would not address findings that were on appeal. The trial court also stated Tatyana had

7

not shown the "extraordinary circumstances" necessary to vacate under CR 60(b)(11). Verbatim

Report of Proceedings (VRP) (Jan. 25, 2017) at 31.

On the topic of supersedeas bonds, Tatyana argued, "I am asking to release from the bond

Mrs. Robertson [John's attorney] placed against the appeal, $12,800." VRP (Jan. 25, 2017) at

10. The trial court explained to Tatyana that under RAP 8.1(h), the proper procedure to

challenge the bonds was a motion to this court.

The trial court then denied Tatyana's motions in a January 25, 2017 order. In its order,

the trial court found that RAP 8.1 controlled the trial court's ability to order payment. The trial

court denied Tatyana's request to release the funds held by the clerk and directed Tatyana to this

court to address that issue.

### III. *MASON* II

In July 2018, we reversed the trial court's 2016 order vacating the 2013 child support

order, and we also vacated the trial court's imposition of CR 11 sanctions. Although we vacated

the sanctions, we affirmed the other fees. Tatyana appealed to our Supreme Court and also filed

a motion for certiorari in the United States Supreme Court. Both courts denied review. *Mason*

II, *review denied*, 192 Wn.2d 1024 (Mar. 6, 2019), *cert. denied*, 140 S. Ct. 296 (Oct. 7, 2019).

Because of this lengthy appeal process, we did not issue mandate on our 2018 decision until

October 2019.

### IV. 2018 MOTION (NO. 52959-9-II)

Judge Wickham retired in 2016. In December 2018, Tatyana filed a motion in the trial

court entitled "Respondent's Motion Moves this Court for an Order Entering the Trial Court's

8

Findings and Conclusions; To Correct Clerical Mistake," requesting the court enter CR 11 findings and award her the sanction fees. CP at 1-4. She asked the trial court, then presided over by Judge Mary Sue Wilson, to enter what she had "cop[ied] and paste[d]" from Judge Wickham's oral ruling regarding sanctions from 2016. VRP (Dec. 14, 2018) at 5.

John's response to Tatyana's motion was late. John claimed the delay was due to an e-mail he received from the court administration that the hearing might be stricken, and requested the court accept the brief. John's response included a copy of our July 2018 decision (*Mason* II) that was still pending on appeal. Tatyana had not included that decision in her motion. The trial court accepted John's brief, finding the *Mason* II decision that he had included necessary to make its decision.

In its December 2018 written order, the trial court explained that it was premature to rule on Tatyana's request because an appeal was pending on the issue (*Mason* II) and that we had not yet issued a mandate. The trial court denied Tatyana's motion.

Tatyana appeals the trial courts' denial of all three motions.

ANALYSIS

Tatyana raises multiple arguments in two separate appeals. Throughout her briefs she argues multiple issues not raised below, re-alleges statements from prior trials, makes numerous credibility arguments, and blends arguments from different issues. From the first appeal (No. 50009-4-II), she argues the trial court erred when it denied her January 2017 motion to compel payment of funds held in a supersedeas bond. In the same appeal, she argues the trial court abused its discretion when it denied her January 2017 CR 60 motion to vacate the 2013 parenting

plan. In her second appeal (No. 52959-9-II), she argues the trial court erred when it denied her

2018 motion to enter findings on CR 11 sanctions that were pending appeal.

We vacated the trial court's 2016 sanctions in *Mason* II, slip op. at 18, and her argument

related to the supersedeas bond is therefore moot. The trial court did not abuse its discretion

when it denied Tatyana's CR 60 motion and the court properly acted within its authority when it

denied her motion to enter findings on an issue pending appeal.

## I. 2017 MOTION TO COMPEL PAYMENT OF FUNDS IN SUPERSEDEAS BONDS

Tatyana argues that the trial court erred when it did not release to her funds held in a

supersedeas bond pending John's appeal in case *Mason* II (No. 49839-1-II). She appears to

argue that the trial court did not properly consider her motion to release the funds and did not

modify the bond amount. We hold that this argument is moot.

"'A case is technically moot if the court can no longer provide effective relief.'" *Randy

Reynolds & Assocs., Inc. v. Harmon*, 193 Wn.2d 143, 152, 437 P.3d 677 (2019) (internal

quotation marks omitted) (quoting *State v. Hunley*, 175 Wn.2d 901, 907, 287 P.3d 584 (2012)).

However, even if a case is moot, we have discretion to decide the issue if the question is of

continuing and substantial public interest. *Randy Reynolds*, 193 Wn.2d at 152. We consider the

following nonexclusive factors to determine whether a case presents an issue of continuing and

substantial public interest: (1) the public or private nature of issue, (2) the need for the future

guidance on the issue, (3) the likelihood of the question's future recurrence, and (4) the level of

adversity between the parties and the quality of their advocacy on the issue. *Randy Reynolds*,

193 Wn.2d at 152-53.

Tatyana seeks the release of funds in a supersedeas bond. A party may stay enforcement of a money judgment by filing a supersedeas bond with the trial court. RAP 8.1(b)(1). John filed the supersedeas bond to prevent payment of the CR 11 sanctions pending the results of *Mason* II. We vacated the sanctions for which the bond amount was held and awarded Tatyana the other fees. We issued mandate on that case in October 2019. Thus, the judgment secured by the supersedeas bond was vacated. Accordingly, we cannot provide Tatyana relief. Additionally, this is not an issue of continuing and substantial public interest. The dispute is private, requires no further guidance, and it is unlikely that the supersedeas issue will recur. Neither party advocates that this is an issue of public interest. Therefore, we do not address Tatyana's argument. Although the argument Tatyana makes on appeal is moot, the issue of whether she is entitled to such sanctions remains with the trial court.

## II. 2017 MOTION TO VACATE PARENTING PLAN

Tatyana argues that the trial court erred when it denied her motion to vacate the "2013 and 2008" parenting plans under CR 60(b)(1), (3), (4), and (11). Suppl. CP at 1581. Tatyana also argues that the trial court's denial of her motion to vacate violated her constitutional right to raising children without state interference, violated federal immigration regulations, failed to consider her financial circumstances, and that we should assign a retired judge as a judge pro-tempore on remand. Tatyana raises no convincing arguments, and her arguments fail.

A. *Legal Principles*

CR 60(b) provides that a trial court may relieve a party from final judgment, order, or proceeding for eleven reasons. Tatyana's motion implicated four subsections:

11

| | |
|---|---|
| CR 60(b)(1): | "Mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order;" |
| CR 60(b)(3): | "Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under rule 59(b);" |
| CR 60(b)(4): | "Fraud . . . , misrepresentation, or other misconduct of an adverse party;" and |
| CR 60(b)(11): | "Any other reason justifying relief from the operation of the judgment." |

*See* Suppl. CP at 1590.

A CR 60 motion "shall be made within a reasonable time and for reasons (1), (2) or (3) not more than 1 year after the judgment, order, or proceeding was entered or taken." CR 60(b). CR 60(b)(11) is "intended to serve the ends of justice in extreme, unexpected situations and when no other subsection of CR 60(b) applies." *Shandola v. Henry*, 198 Wn. App. 889, 895, 396 P.3d 395 (2017). This subsection applies where there are "extraordinary circumstances involving irregularities extraneous to the proceeding." *Shandola*, 198 Wn. App. at 895. An unfair result even when caused by poor representation is insufficient grounds to vacate. *See In re Marriage of Burkey*, 36 Wn. App. 487, 488-90, 675 P.2d 619 (1984). A reduction in income does not generally qualify as an extraordinary circumstance. *See In re Marriage of Yearout*, 41 Wn. App. 897, 898, 902, 707 P.2d 1367 (1985).

We review CR 60(b) orders for abuse of discretion. *Shandola*, 198 Wn. App. at 896. A trial court abuses its discretion when it bases its decision on untenable grounds for untenable reasons. *Shandola*, 198 Wn. App. at 896. We do not weigh evidence or make credibility determinations on appeal. *State v. Davis*, 176 Wn. App. 385, 396 n.10, 308 P.3d 807 (2013) (citing *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004)).

12

No. 50009-4-II;
Cons. No. 52959-9-II

B.      *Abuse of Discretion*

Tatyana argues that the trial court abused its discretion when it denied her 2017 motion to vacate the parenting plan. Tatyana makes no legal argument that the trial court abused its discretion or based its decision on untenable grounds for untenable reasons. Instead, she lays out grievances and allegations arising out of her disputes with John, her immigration status, and her financial situation since the divorce, arguing that the 2013 trial, and not the trial court's decision on her 2017 motion to vacate, was flawed. Her arguments raise issues of credibility and evidentiary weight that we may not review.

Tatyana also appears to argue that we erred in vacating sanctions against John in *Mason* II. Tatyana's attempts to have our decision reversed failed. Ruling on Reconsideration, *In re Marriage of Mason*, No. 52959-9-II (Wash. Ct. App. Dec. 16, 2019) (*Mason* II). Moreover, to the extent that her brief alleges an abuse of discretion at all, her arguments are not apt.

1. *CR 60(b)(1) and (3)*

We affirmed the 2013 parenting plan in July 2015. Tatyana filed this CR 60 motion in January 2017. Thus, her claims under CR 60(b)(1) and (3) are barred as untimely because they were filed more than one year after the 2013 parenting plan was final. CR 60(b). Accordingly, the trial court properly denied her motion on these claims.

2. *CR 60(b)(4): Fraud, Misrepresentation, or Misconduct*

Tatyana's argument that the trial court abused its discretion when it denied her motion to vacate the 2013 parenting plan based on CR 60(b)(4) also fails.

13

To find fraud, the trial court must make findings of fact and conclusions of law on the nine elements of common law fraud. *In re Marriage of Maddix*, 41 Wn. App. 248, 252, 703 P.2d 1062 (1985).[4] The moving party must prove misconduct by clear and convincing evidence. *Mitchell v. Wash. Inst. Pub. Policy*, 153 Wn. App. 803, 825, 255 P.3d 280 (2009). To vacate for misrepresentation, the moving party must have relied on or been misled by the representation. *See Smith v. Dewar*, 185 Wn. App. 544, 562, 328 P.3d 328 (2015). The moving party must also "show misconduct that prevented a full and fair presentation of its case." *Dalton v. State*, 130 Wn. App. 653, 665, 124 P.3d 305 (2005).

The only allegations of fraud, misrepresentation, or misconduct that Tatyana raised in the trial court were those arising out of arguments made in the November 2016 trial conducted by Judge Wickham. At that trial, the court considered Tatyana's motion to vacate the 2013 child support order and any unpaid child support. The 2013 parenting plan was not at issue in that trial. The 2016 trial court issued sanctions against John that were pending appeal at the time Tatyana's 2017 motion was filed and heard. At the November 2016 trial, Tatyana raised no new evidence and made no arguments based on the 2013 parenting plan, or our mandate affirming

---

[4] "In Washington, common law fraud has 9 essential elements, all of which must be established by clear, cogent, and convincing evidence:

> (1) A representation of an existing fact; (2) its materiality; (3) its falsity; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person to whom it is made; (6) ignorance of its falsity on the part of the person to whom it is made; (7) the latter's reliance on the truth of the representation; (8) his right to rely upon it; (9) his consequent damage."

*N. Pac. Plywood, Inc. v. Access Rd. Builders, Inc.*, 29 Wn. App. 228, 232, 628 P.2d 482 (1981).

14

that plan in 2015. She did not show any of the nine elements of fraud in the trial court, nor did she show how any misconduct on John's part prevented a presentation of her 2013 case. Thus, the trial court properly determined that Tatyana's CR 60(b)(4) argument flowed from the November 2016 trial and that it could not address those findings that were on appeal.

Tatyana's argument on appeal is similarly flawed. Instead of pointing to the trial court's error, she appears to accuse the attorney who represented her in 2013 of misrepresentation. The only case she cites to is *Liu v. Mund*, 686 F.3d 418, 419-20 (7th Cir. 2012). That case involves spousal support under immigration law and has nothing to do with fraud, misrepresentation, or CR 60. *Liu*, 686 F.3d at 419-20. Because Tatyana did not show fraud, misconduct, or misrepresentation, and because the issue of the propriety of the statements she relied on were pending appeal, the trial court properly denied her motion to vacate under CR 60(b)(4).[5]

### 3. *CR 60(b)(11): Extraordinary Circumstances*

Tatyana argues that the trial court abused its discretion when it denied her motion to vacate under CR 60(b)(11). We disagree.

CR 60(b)(11) is "intended to serve the ends of justice in extreme, unexpected situations and when no other subsection of CR 60(b) applies." *Shandola v. Henry*, 198 Wn. App. at 895.

---

[5] In a footnote, John argues that Tatyana's CR 60(b)(4) and (11) claims are also time barred. He appears to argue that because the trial on the parenting plan was in 2013, the January 2017 CR 60 motion was not filed within a reasonable time. However, Tatyana bases many of her arguments on incidents that occurred during the November 2016 trial that was pending appeal. "The critical period is the period between when the moving party became aware of the reason to vacate the judgment and when the moving party filed its motion." *Dalton*, 130 Wn. App. at 663 (2005). Because of this timing irregularity, we resolve the CR 60(b)(4) and (11) issues on the merits.

This applies where there are "extraordinary circumstances involving irregularities extraneous to the proceeding." *Shandola*, 198 Wn. App. at 895.

The trial court determined there were no extraordinary circumstances. Tatyana's motion merely restated her grievances that were decided in the 2013 trial or were credibility issues before the court in 2012. Her claims of extraordinary circumstances were that John and his trial counsel lied to the court that the children were in an abusive environment with John. However, in the 2013 parenting plan, the trial court (which had the same judge presiding for both the trial resulting in *Mason* I and the 2017 motion) found that Tatyana was abusive toward the children. The court had no concerns about future domestic violence from John. Tatyana presented no new evidence to the trial court related to abuse allegations in her CR 60(b)(11) motion.[6]

On appeal, Tatyana cites *In re Marriage of Jennings*, 138 Wn.2d 612, 625-26, 980 P.2d 1248 (1999) without analysis. *Jennings* is factually distinguishable. Although *Jennings* was a decision on a CR 60(b)(11) motion, it had nothing to do with a parenting plan. In *Jennings*, our Supreme Court held that a decrease in military retirement benefits in the wake of a dissolution decree was an exceptional circumstance warranting vacation or modification of the divorce decree. 138 Wn.2d at 628-29. Accordingly, it is not apt.

Tatyana also relies on *State v. Keller*, 32 Wn. App. 135, 647 P.2d 35 (1982), without analysis. *Keller* is also distinguishable because it was a criminal case involving dismissal of a

---

[6] The trial court explained: "There were things that happened during the [2013] trial before me that were troublesome, and one of the things that was troublesome was the findings by CPS that Ms. Mason had physically abused the children, and those findings haven't been changed. Those findings were one of the reasons the court ordered what it ordered." VRP (Jan. 25, 2017) at 34.

juvenile prosecution. *Keller*, 32 Wn. App. at 136. At issue was a dispute over the proper method for the State to reinstate charges after a trial court vacated them. *Keller*, 32 Wn. App. at 140-41. To the extent it applies at all, the *Keller* court's analysis works against Tatyana; the court noted that "[t]he 'any other reason' language of CR 60(b)(11) is thus not a blanket provision authorizing reconsideration for all conceivable reasons." *Keller*, 32 Wn. App. at 141.

The trial court did not abuse its discretion when it determined that Tatyana did not show extraordinary circumstances. The trial court's decision was based on the record before it, and was reasonable. Thus, the trial court did not abuse its discretion when it dismissed Tatyana's motion to vacate under CR 60(b)(11).

C.      *Right To Raise Children Without State Interference*

Tatyana argues for the first time on appeal that the trial court's denial of her motion to vacate the parenting plan prevents her from seeing her children and therefore violates her right to raise her children without State interference. We do not consider this argument.

We generally will not review error not raised in the trial court. RAP 2.5; *Sprute v. Bradley*, 186 Wn. App. 342, 358, 344 P.3d 730 (2015). However, a party may raise for the first time on appeal (1) lack of trial court jurisdiction, (2) failure to establish facts upon which relief can be granted, and (3) manifest error affecting a constitutional right. RAP 2.5(a). "An error is manifest when the appellant shows actual prejudice." *In re Adoption of K.M.T.*, 195 Wn. App. 548, 567, 381 P.3d 1210 (2016). To establish prejudice, a party must show the error had practical and identifiable consequences in the trial. *Adoption of K.M.T.*, 195 Wn. App. at 567.

17

Where a party claims constitutional error, we preview the merits of the claim to determine whether the argument is likely to succeed. *State v. Walsh*, 143 Wn.2d 1, 8, 17 P.3d 591 (2001).

"Parents have a fundamental liberty interest in the care, custody, and management of their children" as protected by the Fourteenth Amendment. *Adoption of K.M.T.*, 195 Wn. App. at 559; *In re Welfare of H.Q.*, 182 Wn. App. 541, 550, 330 P.3d 195 (2014). Therefore, Tatyana makes a colorable claim of constitutional magnitude. However, Tatyana must still show a manifest error that involved actual prejudice.

Tatyana makes no showing of error. She does not credibly explain how the trial court unconstitutionally interfered with her parental rights. She merely restates claims regarding John's credibility from the 2013 trial. She ignores the trial court's 2013 findings of Tatyana's physical abuse against the children. She cites to no other case nor makes any argument that a constitutional error affected the 2016 trial or the motion to vacate below. Accordingly, we do not consider this issue. RAP 2.5.

D.      *Violations of Federal Immigration Regulations*

Tatyana argues that the trial court's denial of her 2017 motion to vacate the parenting plan violated federal immigration regulations. She appears to argue that the denial tangentially impacted her immigration status, which prevents her from gaining employment. To support this argument, she recites portions of the record from the 2013 and 2016 trials. Crucially, she challenges the 2013 trial court's income imputation and how that created a barrier to her ability to have therapeutic visits with the children. Thus, she argues again that the 2013 parenting plan is invalid. This argument is barred by res judicata.

18

Res judicata is a question of law we review de novo. *In re Marriage of Shortway*, 4 Wn. App. 2d 409, 423, 423 P.3d 270 (2018). Res judicata bars a party from relitigating actions a court has already determined. *Shortway*, 4 Wn. App. 2d at 422. Res judicata also bars litigation by collateral attack, which generally includes a motion filed in a different action. *Shortway*, 4 Wn. App. 2d at 422. "The doctrine of res judicata applies 'where a prior final judgment is identical to the challenged action in (1) subject matter, (2) cause of action, (3) persons and parties, and (4) the quality of the persons for or against whom the claim is made.'" *Shortway*, 4 Wn. App. 2d at 423 (internal quotation marks omitted) (quoting *Lynn v. Dep't of Labor & Indus.*, 130 Wn. App. 829, 836, 125 P.3d 202 (2005)).

The parenting plan issues Tatyana raises here were settled in the 2013 trial and affirmed by this court in *Mason* I. The 2013 trial court found, and we explained in our affirming opinion, that Tatyana was uncooperative in disclosing her finances and that she never organized any therapeutic visits. Accordingly, we held that the 2013 trial court did not abuse its discretion when it implemented the 2013 parenting plan.

Tatyana's argument meets all four elements of res judicata. (1) Subject matter: The challenged action is the 2013 parenting plan, which is identical in subject matter to the 2013 trial and 2015 appeal. (2) Cause of action: Tatyana challenges the implementation of the 2013 parenting plan via collateral attack on her motion to vacate. (3) Persons and parties: John and Tatyana are parties throughout this dispute. (4) Quality of the persons against whom claim is made: John and Tatyana remain the parents in a dispute over a parenting plan. Thus, Tatyana's argument is barred by res judicata.

19

E.       *Consideration of Financial Circumstances*

Tatyana argues that the trial court failed to consider the parties' financial circumstances, especially as related to her immigration status, when it denied her 2017 motion to vacate the parenting plan. This argument is also barred by res judicata.

Tatyana does not argue that the trial court was required to consider financial circumstances in her CR 60 motion and she again recites portions of the record from the 2013 and 2016 trials. Tatyana re-alleges the same arguments regarding immigration and income from her argument above on immigration regulations that were settled in *Mason* I and *Mason* II. Thus, for the reasons explained above, her argument is barred by res judicata.

F.       *Remand to Judge Wickham*

Tatyana argues that we should remand to the trial court for "re-trial" in front of Judge Wickham as a judge pro tempore. Tatyana makes an identical argument in her second brief. This issue is tied to Tatyana's 2018 motion to enter the 2016 trial court's CR 11 findings, not to her motion to vacate. Accordingly, it is discussed below.

### III. 2018 MOTION TO ENTER TRIAL COURT'S FINDINGS AND CONCLUSIONS AND CORRECT MISTAKES

Tatyana argues that the trial court erred when it denied her 2018 motion to have the trial court enter findings and conclusions arising from the 2016 trial. Tatyana makes multiple arguments based on the credibility and character of John and his counsel, and restates facts from her prior brief and earlier trials. Tatyana appears to assign error to the trial court's denial of her December 2018 motion to enter CR 11 findings from the 2016 trial, despite that the case was pending appeal and we had not yet entered a mandate. Tatyana also requests that we order

No. 50009-4-II;
Cons. No. 52959-9-II

retired Judge Christopher Wickham to be installed as a judge pro tempore so that he may enter factual findings on whether or not CR 11 sanctions are appropriate after we vacated those sanctions in 2018, and remanded for the trial court to enter findings or reconsider the imposition of sanctions.

The trial court correctly denied Tatyana's motion because the issue was pending appeal and had not been mandated at the time of the motion. Additionally, the trial court had no authority to enter findings for a trial heard by a predecessor judge. Although retired Judge Wickham is *authorized* to act as a judge pro tempore by statute, we have no authority to *require* him to hear the CR 11 issue on remand.

A.      *Legal Principles*

The Clerk of the Court of Appeals issues the mandate for our decisions when review is terminated. RAP 12.5(b). "If a petition for review has been timely filed and denied by the Supreme Court," termination occurs "upon denial of the petition for review." RAP 12.5(b)(3). Our decision is effective only "[u]pon issuance of the mandate of the appellate court as provided in rule 12.5." RAP 12.2; *see also* RAP 12.7(a). Under RAP 7.2(e), a trial court has the authority to hear and determine postjudgment motions, but "[i]f the trial court determination will change a decision then being reviewed by the appellate court, the permission of the appellate court must be obtained prior to the formal entry of the trial court decision." RAP 7.2(e)(2). Where a trial court does not seek permission from us before entering findings in a decision on review, it lacks authority to enter those findings. *State v. Friedlund*, 182 Wn.2d 388, 395-96, 341 P.3d 280 (2015).

21

In Washington, a successor judge generally may not enter findings of fact based on testimony heard by her predecessor. *Tacoma Recycling, Inc. v. Capital Material Handling Co.*, 42 Wn. App. 439, 441-42, 711 P.2d 388 (1985); *In re Marriage of Crosetto*, 101 Wn. App. 89, 95, 1 P.3d 1180 (2000). This rule applies even where the prior judge entered an oral decision or memorandum. *State v. Bryant*, 65 Wn. App. 547, 549, 829 P.2d 209 (1992). A judge "*shall not act . . .* [w]hen he or she was not present and sitting as a member of the court at the hearing of a matter submitted for its decision." RCW 2.28.030 (emphasis added). However, CR 63(b) provides a limited exception to this rule:

> If by reason of death, sickness, or other disability, a judge before whom an action has been tried is unable to perform the duties to be performed by the court under these rules after a verdict is returned or findings of fact and conclusions of law are filed, then any other judge regularly sitting in or assigned to the court in which the action was tried may perform those duties; *but if a new judge cannot perform those duties*, the new judge has the discretion to grant a new trial.

(Emphasis added).

When read together, case law and civil rules "set forth the rule that a successor judge only has the authority to do acts which do not require finding facts. Only the judge who has heard evidence has the authority to find facts." *Crosetto*, 101 Wn. App. at 96 (quoting *Bryant*, 65 Wn. App. at 550). Thus, a successor judge has the power to enter conclusions of law only; any finding of fact must be made in a new trial. *Tacoma Recycling*, 42 Wn. App. at 442; *In re Welfare of Woods*, 20 Wn. App. 515, 517, 581 P.2d 587 (1978) (holding that in a case where termination of parental rights was remanded for entry of additional findings a new trial was required where the trial judge had left the bench); *Wold v. Wold*, 7 Wn. App. 872, 877, 503 P.2d 118 (1972) (holding that a new trial is required in a dissolution action where the appellate court

22

concluded there were inadequate findings of fact and the trial judge who entered the deficient findings had died).

A successor judge may make findings of fact based on evidence from an earlier trial only where the parties agree to allow it. *Crosetto*, 101 Wn. App. at 96-97.

If an elected superior court judge retires leaving a pending case in which the judge has made discretionary rulings, "the judge is entitled to hear the pending case as a judge pro tempore without any written agreement." RCW 2.08.180. But we have no authority to assign trial court judges to a given case. Indeed, "[t]rial courts have inherent authority to control and manage their calendars, proceedings, and parties." *State v. Gassman*, 175 Wn.2d 208, 211, 283 P.3d 1113 (2012) (citing *Cowles Publ'g Co. v. Murphy*, 96 Wn.2d 584, 588, 637 P.2d 966 (1981)).

B.  *Judge's Authority To Enter Findings on Issue Pending Appeal*

Tatyana makes multiple arguments to support her contention that the trial court erred when it denied her motion to enter findings. None are convincing. We first address Tatyana's arguments that directly apply to whether a judge has authority to enter findings regarding an issue on appeal before turning to her supporting arguments.

1.  *Entering Findings on an Issue Pending Appeal*

Tatyana argues that the trial court erred when it ruled her motion was premature and that the trial court was barred from entering findings regarding an issue pending appeal. We disagree.

Under RAP 7.2(e), the trial court has the authority to hear and determine postjudgment motions. However, "[i]f the trial court determination will change a decision then being reviewed

by the appellate court, the permission of the appellate court must be obtained prior to the formal entry of the trial court decision." RAP 7.2(e)(2). Our decisions are effective only "[u]pon issuance of the mandate of the appellate court as provided in rule 12.5." RAP 12.2, *see also* RAP 12.7(a).

Tatyana filed her motion in December 2018. We did not issue our mandate in *Mason* II until October 2019. *Mason* II included the issue of whether to affirm or vacate the CR 11 sanctions against John. Thus, Tatyana was seeking to have the trial court change the decision then being reviewed by the appellate court. RAP 7.2(e). To make such a decision, the trial court would have had to seek permission from this court, which it did not. Accordingly, the trial court did not err when it denied Tatyana's motion to enter findings.

Tatyana argues that the 2016 trial court's error in not entering findings on the CR 11 sanctions was merely a "clerical error" and that RAP 7.2(e) allows a trial court to correct clerical errors at any time during an appeal. 2 Br. of Appellant (52959-9-II) at 44. She cites *State v. Vailencour*, 81 Wn. App. 372, 378, 914 P.2d 767 (1996), for the statement that Division One of this court has "previously held, in the civil context, that the trial court's failure to enter findings and conclusions is a clerical error which may be corrected any time during the appeal process under CR 60(a) and RAP 7.2(e)." *Vailencour*, 81 Wn. App. at 378 (citing *In re Marriage of Stern*, 68 Wn. App. 922, 927-28, 846 P.2d 1387 (1993)). She also cites to *Stern*.[7]

---

[7] Tatyana's remaining citation is to *State v. Portomene*, 79 Wn. App. 863, 865, 905 P.2d 1234 (1995), but that case was also a criminal case that regarded clerical errors that neither prejudiced the defendant nor were substantive errors.

But Tatyana's reliance on *Stern* is misplaced. In *Stern*, the court held that the failure to enter findings was an inadvertent oversight and not a substantive error. 68 Wn. App. at 927-28. Moreover, even assuming, *arguendo*, that the 2016 trial court's failure to enter proper findings on CR 11 was a clerical error, it still has to meet the standard of CR 60(a). CR 60(a) requires that clerical errors "may be so corrected before review is accepted by an appellate court, and thereafter may be corrected pursuant to RAP 7.2(e)." The trial court would still be barred under RAP 7.2(e) from entering findings on an issue before the court without first obtaining permission from this court. Thus, the trial court was correct when it ruled Tatyana's motion was premature.

2. *John's Untimely Response to Tatyana's Motion*

Tatyana argues that John's response brief to the trial court was late and should have been stricken. She argues that the trial court erred when it considered John's response. We disagree.

The discretion whether to accept untimely documents rests with the trial court. *O'Neill v. Farmers Ins. Co.*, 124 Wn. App. 516, 521, 125 P.3d (2004). We review a motion to strike a pleading for an abuse of discretion. *King County Dep't of Adult & Juv. Det. v. Parmelee*, 162 Wn. App. 337, 360, 254 P.3d 927 (2011). A trial court abuses its discretion when it bases its decision on untenable grounds for untenable reasons. *Shandola*, 198 Wn. App. at 896. When a deadline for a filing has passed, a court may accept a late filing if the party files a motion explaining excusable neglect. CR 6(b)(2).

Tatyana cites *Pioneer Inv. Sers. Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380, 385, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993), for eight factors a federal court may consider

25

when determining excusable neglect. But these factors do not apply to a state court procedure. *See Pioneer Inv. Servs.*, 507 U.S. at 395 (citing Fed. Bankr. R. 9006(b)(1)).

To the extent these factors are applicable, they favor John, and not Tatyana. Tatyana shows no prejudice, there was no delay to judicial proceedings, and John explained to the trial court that his delay was due to confusion over whether the court might strike the December 2018 hearing. Moreover, John included the *Mason* II opinion in his response and the trial court found the opinion necessary in making its decision. Thus, the trial court did not abuse its discretion when it considered John's response to Tatyana's motion.

3. *Citations to Our Prior Opinion*

Tatyana argues that the trial court should have entered findings on the CR 11 sanctions because we ordered it to do so on remand in *Mason* II, slip op. at 18. She is mistaken.

We vacated the 2016 award of sanctions, and gave the trial court options as to how it might proceed. We stated, "[W]e vacate the trial court's order imposing CR 11 sanctions on John and remand either for entry of specific findings supporting the award of CR 11 sanctions that are included or incorporated in the court's CR 11 order or a determination that CR 11 sanctions are not warranted." *Mason* II, slip op. at 18. Accordingly, the trial court was not required to enter new findings on remand, but could have determined that no sanctions were warranted.

4. *Tatyana Re-alleges Settled Issues*

Tatyana argues that the trial court in 2016 approved the CR 11 sanctions and that those sanctions should be maintained. She argues that the trial court's ruling was correct under an

26

abuse of discretion standard—in other words, she argues that the 2016 trial court did not abuse its discretion when it imposed CR 11 sanctions. This argument is barred by res judicata.

As discussed above, res judicata applies "where a prior final judgment is identical to the challenged action in (1) subject matter, (2) cause of action, (3) persons and parties, and (4) the quality of the persons for or against whom the claim is made." *Shortway*, 4 Wn. App. 2d at 422-23 (internal quotation marks omitted) (quoting *Lynn*, 130 Wn. App. at 836).

Tatyana's argument is based on the same subject matter (the trial court's CR 11 sanctions) that arose out of the same cause of action, (the 2016 trial) between the same parties (Tatyana and John) and involving the same parties in interest. We vacated the CR 11 sanctions in *Mason* II, slip op. at 18. The issue of sanctions was argued in the 2016 trial and we mandated our decision to vacate. Res judicata bars this argument.

Moreover, Tatyana bases her argument on the false premise that we *approved* the CR 11 sanctions. To be clear, our decision did not address the issue of the sanctions on their merits; we merely held that the trial court failed to make sufficient findings to support them. Tatyana's argument in this appeal that the trial court did not abuse its discretion in awarding sanctions again suffers the same fate; without sufficient findings of fact, we are unable to consider the appropriateness of the sanctions. Although the argument Tatyana makes on appeal is barred by res judicata, the issue of whether she is entitled to such sanctions remains with the trial court.

C.      *Successor Judges and Judges Pro Tempore*

        1.  *Findings of Fact by a Successor Judge*

Tatyana argues that the trial court should have entered the findings of fact because the case that the court relied on in making its decision, *Tacoma Recycling*, 42 Wn. App. at 441-42, is not apt.  We disagree.

In *Tacoma Recycling*, Tacoma Recycling obtained a money judgement against the defendant, CMH.  42 Wn. App. at 439.  Division One of this court held that there were no findings of fact and conclusions of law and vacated the trial court's decision.  *Tacoma Recycling*, 42 Wn. App. at 440.  The trial court judge then retired.  *Tacoma Recycling*, 42 Wn. App. at 440.  His replacement denied CMH's motion for a new trial, adopted the original judge's findings and conclusions in toto, and entered judgment for Tacoma Recycling.  *Tacoma Recycling*, 42 Wn. App. at 440.  On the second appeal, we held that the successor judge had no authority to enter findings of fact.  *Tacoma Recycling*, 42 Wn. App. at 442.  The "vacation of those findings rendered them completely nugatory; they must be treated as if they never had been entered." *Tacoma Recycling*, 42 Wn. App. at 442.

Tatyana argues that *Tacoma Recycling* is distinguishable because, she states, the judge there died and because here, unlike in *Tacoma Recycling*, the prior appeal did not vacate the trial court's findings.  Both of her arguments are factually inaccurate.  The prior judge in *Tacoma Recycling* retired.  *Tacoma Recycling*, 42 Wn. App. at 440.  And we vacated the CR 11 sanctions.  Thus, *Tacoma Recycling* is on point and applies here.

28

*Tacoma Recycling* is part of well settled law that a successor judge has the power to enter

conclusions of law only; any finding of fact must be made in a new trial. *Tacoma Recycling*, 42

Wn. App. at 442; *Welfare of Woods*, 20 Wn. App. at 517 (holding that in a case where

termination of parental rights was remanded for entry of additional findings a new trial was

required where the trial judge had left the bench); *Wold*, 7 Wn. App. at 877 (holding that a new

trial is required in a dissolution action where the appellate court concluded there were inadequate

findings of fact and the trial judge who entered the deficient findings had died). Accordingly, the

trial court properly relied on *Tacoma Recycling* when it denied Tatyana's motion.

2. *Assignment of a Judge Pro Tempore*

Tatyana argues that Judge Wickham has authority to preside over the case on remand as a

judge pro tempore, despite his retirement. In this she is correct. However, she goes further and

argues that we should *appoint* Judge Wickham as the judge pro tempore to enter CR 11 findings.

Her requested relief is beyond our authority.

A previously elected superior court judge who retires is entitled to hear a pending case as

a judge pro tempore. RCW 2.08.180. But the authority to assign or appoint a judge to a given

case is beyond our authority. Authority over trial court calendars and proceedings rests almost

entirely with the trial court. *State v. Gassman*, 175 Wn.2d at 211 (citing *Cowles Publ'g Co.*, 96

Wn.2d at 588). And there is no guarantee that the trial court would ask Judge Wickham to come

out of retirement or that he would agree to do so.

Tatyana cites to no authority to support her argument that we may assign a trial court

judge to a case, let alone require a retired judge to return to the bench to hear a matter on remand.

29

Because she does not provide a citation to authority, we assume none exists. *State v. K.A.B.*, 14 Wn. App. 2d 677, 703, 475 P.3d 216 (2020). Thus, it is outside our authority to assign a retired judge as a judge pro tempore to hear an issue on remand.[8]

John argues that even if Tatyana could request that Judge Wickham preside, he would have filed an affidavit of prejudice to ask the judge to recuse or be removed. John appears to argue that he would be able to compel Judge Wickham to be removed for prejudice simply because he entered findings adverse to John in a prior hearing. This is plainly wrong. Judge Wickham has already made rulings on this case, so John is unable to file an affidavit of prejudice. RCW 4.12.050(1)(a).

John also argues that he would file a successful motion requiring Judge Wickham to recuse. We do not address this argument other than to say that on this record, we see no behavior on the part of Judge Wickham that would warrant his removal. Judge Wickham's credibility determinations, sanctions, and rulings in a case do not result in the appearance of "personal bias or prejudice" under the Code of Judicial Conduct as John contends. CJCR 2.11(A)(1); 2 Br. of Resp't (52959-9) at 29. Instead, reviewing and revising cases on remand is the day-to-day business of the trial court. John's argument is deeply flawed.

---

[8] Tatyana also cites to *Zachman v. Whirlpool Fin. Corp.*, 123 Wn.2d 667, 869 P.2d 1078 (1994). There the trial court appointed a retired judge to come back and hear a remanded case on its own motion. *Zachman*, 123 Wn.2d at 669. Therefore *Zachman* supports the argument that Judge Wickham may be appointed, but does not support that it is within our authority to do so. Tatyana's remaining arguments concern interpretation of ballot measures and are inapposite.

Because the trial court was correct to deny Tatyana's motion to enter the CR 11 findings and because we cannot compel Judge Wickham to return from retirement as a judge pro tempore, the trial court is left with choices on how to resolve the CR 11 findings issue from *Mason* II on remand. Among those choices are to recall Judge Wickham, if he is willing, to serve as judge pro tempore to determine if sanctions are appropriate in the wake of *Mason* II and, if so, to enter CR 11 findings. RCW 2.08.180. Or the trial court may hold a new trial or evidentiary hearing. *Tacoma Recycling*, 42 Wn. App. at 442; *Welfare of Woods*, 20 Wn. App. at 517; *Wold*, 7 Wn. App. at 877.

## IV. CONCLUSION

The trial court properly denied Tatyana's motion to release funds in a supersedeas bond. Because the issue for which those funds were held has been vacated, her arguments to the contrary are moot. The trial court did not abuse its discretion when it denied her motion to vacate the 2013 parenting plan under CR 60. She raises only credibility arguments from the prior trials. Her argument that her constitutional right to raise children was violated by the parenting plan was raised for the first time on appeal and we do not consider it. Tatyana's argument on federal immigration regulations is barred by res judicata as is her argument that the trial court failed to consider the parties' financial circumstances. The trial court did not err when it denied her 2018 motion to enter findings on an issue then pending appeal because her motion was premature. Finally, although a retired trial court judge is authorized to sit as a judge pro tempore by statute, we have no authority to order him to come out of retirement to preside over a case. Thus, the trial court made no error, and we affirm.

31

No. 50009-4-II;
Cons. No. 52959-9-II

ATTORNEY FEES

Tatyana argues that we should re-enter CR 11 sanctions against John. That decision is left to the trial court, and is pending the remand of *Mason* II.

Tatyana argues that we should impose sanctions against John and his trial counsel under RAP 18.9 for "multiple frivolous pleadings and misstatements of fact." 2 Br. of Appellant (52959-9-II) at 48. We disagree.

RAP 18.9 authorizes us to "award sanctions against a party who uses the Rules of Appellate Procedure for the purposes of delay, files a frivolous appeal, or fails to comply with the Rules of Appellate Procedure." *Schorno v. Kannada*, 167 Wn. App. 895, 904, 276 P.3d 319 (2012).

> "In determining whether an appeal is frivolous and was, therefore, brought for the purpose of delay, justifying the imposition of terms and compensatory damages, we are guided by the following considerations: (1) A civil appellant has a right to appeal under RAP 2.2; (2) all doubts as to whether the appeal is frivolous should be resolved in favor of the appellant; (3) the record should be considered as a whole; (4) an appeal that is affirmed simply because the arguments are rejected is not frivolous; (5) an appeal is frivolous if there are no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility of reversal."

*Lee v. Kennard*, 176 Wn. App. 678, 692, 310 P.3d 845 (2013) (quoting *Tiffany Family Trust Corp. v. City of Kent*, 155 Wn.2d 225, 241, 119 P.3d 325 (2005).

Here, although John makes some improper arguments, there is nothing in the record on appeal to suggest he filed any frivolous pleading or misstatement to us. The allegations of misstatements that Tatyana raises against John concern his pleadings and performance at the court below, not before us. Accordingly, we deny Tatyana's request for sanctions against John.

32

John also argues that we should impose sanctions against Tatyana under RAP 18.9 for Tatyana's "scurrilous, impertinent, vexatious, intransigent, and frivolous appeal arguments." 2 Br. of Resp't (52959-9-II) at 32. Although Tatyana has filed multiple motions and this dispute has gone on for years, this particular appeal does not meet the definition of frivolous as described above. Viewing Tatyana's appeal as a whole, there are issues she raises that are not totally devoid of merit. Thus, we deny John's request for sanctions under RAP 18.9.

We deny both parties' requests for attorney fees. We affirm the decisions of the trial court.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Lee, C.J.

_____
Veljacic, J.

33